IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br><br> Plaintiff; <br><br> v. <br><br> CEQUEL COMMUNICATIONS, LLC D/B/A SUDDENLINK COMMUNICATIONS AND CSC HOLDINGS, LLC D/B/A OPTIMUM-CABLEVISION, <br><br> Defendants. | Civil Action No. 18-1752-RGA |

MEMORANDUM OPINION

Stephen J. Kraftschik, Christina B. Vavala, POLSINELLI PC; B. Trent Webb, Aaron E. Hankel, John D. Garretson, Ryan J Schletzbaum, Ryan D. Dykal, Jordan T. Bergsten, Lauren E. Douville, Mark D. Schafer, Maxwell C. McGraw, Samuel J. LaRoque, Lydia C. Raw, SHOOK, HARDY & BACON L.L.P., Kansas City, MO; Robert H. Reckers, Michael W. Gray, Jonathan M. Hernandez, SHOOK, HARDY & BACON L.L.P, Houston, TX;

 Attorneys for Plaintiff.

Frederick L. Cottrell, III, Jason J. Rawnsley, Alexandra M. Ewing, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Brian C. Swanson, Tulsi E. Gaonkar, Luke C. Beasley, BARTLIT BECK LLP, Chicago, IL; Lindley J. Brenza, Sean C. Grimsley, BARTLIT BECK LLP, Denver, CO;

 Attorneys for Defendants.

January 28, 2022

1

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion for partial summary judgment of noninfringement. (D.I. 250). I have considered the parties' briefing. (D.I. 251, 278, 299). For the most part, I think Sprint has raised genuine issues of material fact and can present its evidence to a jury. Defendants' motion is granted-in-part and denied-in-part.

## I.  BACKGROUND

Plaintiff Sprint sued Defendants Cequel Communications, LLC d/b/a Suddenlink Communications ("Suddenlink"), CSC Holdings, LLC d/b/a Optimum-Cablevision ("Cablevision"), and Altice USA, Inc.[1] for infringement of various patents related to telecommunications technology. (D.I. 1). The relevant patents are U.S. Patent Nos. 6,452,932 ("the '932 Patent"), 6,463,052 ("the '052 Patent"), 6,633,561 ("the '3,561 Patent"), 7,286,561 ("the '6,561 Patent"), 6,343,084 ("the '084 Patent"), 6,473,429 ("the '429 Patent"), 6,298,064 ("the '064 Patent"), 6,330,224 ("the '224 patent"), and 6,697,340 ("the '340 patent").

The asserted patents claim technology that allows modern telecommunications infrastructure to connect with legacy telecommunications systems. (*See* D.I. 1 ¶¶ 11-16). Legacy systems carried phone calls over wired connections along "narrowband systems such as the public switched telephone network (PSTN)." (D.I. 278 at 1; D.I. 1 ¶ 11). More modern systems use packets of data, much like computers. (D.I. 1 ¶ 12). The patents at issue allow for "the PSTN to 'talk' to packet-based networks to set up and route telephone calls across these disparate networks in a seamless and transparent manner." (*Id.* ¶ 13). This "Voice-over-Packet" ("VoP") technology provided the bedrock for other technologies such as Voice over Internet

---

[1] Only Suddenlink and Cablevision remain as defendants. (*See* D.I. 16).

Protocol ("VoIP"). (D.I. 249-1, Ex. A ¶ 30). Sprint accuses Defendants' VoIP cable networks of infringing Sprint's patents.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

When an accused infringer moves for summary judgment of non-infringement, such relief may be granted only if at least one limitation of the claim in question does not read on an element of the accused product, either literally or under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1376 (Fed. Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial.").

## III. DISCUSSION

### A. "Selection" of Routing Information

Several asserted claims require a "processing system" that processes information "to select" certain routing information. (D.I. 251 at 8). Defendants argue that Sprint cannot meet the "selection" limitation because to "select" is to choose between multiple options and no device in the accused network chooses between multiple options. (*Id.* at 8-10). Rather, "Each

set of dialed digits in the Accused Networks corresponds to one, and only one, predetermined destination . . . ." (*Id.* at 9.).

Sprint responds that its technical expert, Dr. Wicker, has articulated an infringement theory that describes selection as a multi-step process in which the accused networks "do indeed choose between multiple options." (D.I. 278 at 8-11). "In particular, Defendants' processing systems engage in a number of steps to make the claimed selections, including processing signaling to find an appropriate database, submitting an appropriate query, and choosing the correct entry in that database, to thereby determine which destination . . . is appropriate for a given call." (*Id.* at 8-9).

The "selection" claim term is given its plain and ordinary meaning. (*See* D.I. 278 at 1).[2] Applying the term's plain and ordinary meaning, Sprint's expert has offered a theory that selection is a process, not a single step. Defendants vigorously argue that the term "selection" means selection of one item from multiple choices which precludes infringement. Whether Dr. Wicker's theory of infringement meets the claim limitations is for the jury to decide. *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) ("[T]he parties' dispute concerns factual questions relating to the test for infringement . . . ."). Thus, Sprint has raised a genuine issue of material fact regarding the selection of routing information.

### B. Selection of a Narrowband Switch

Claims 1 and 16 of the '932 patent require that a "narrowband switch" be selected. Sprint's infringement theory is that the accused networks select narrowband switches on the

---

[2] I declined to construe the "processing ... to select" claim language in the related case *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.* 2019 WL 7037656 at *9-10 (D. Del. Dec. 20, 2019). This language appears in some, but not all, of the asserted claims at issue here. The "selecting" language of the other claims was not disputed at claim construction and is thus also given its plain and ordinary meaning.

4

PSTN. Defendants argue that the PSTN contains a "significant number" of items with which the accused networks could interact, and Sprint has failed to show in the affirmative that any of these items are indeed narrowband switches. (D.I. 251 at 11-12). Sprint responds, "Defendants' own documents show that the accused networks' processing systems send narrowband signaling to a particular point code associated with narrowband switches on the PSTN." (D.I. 278 at 12).

I find this is enough to raise a genuine issue of material fact. If indeed the narrowband signaling can only go to specific point codes that are solely associated with narrowband switches, and this step is required for the process, then it is unnecessary for Sprint to identify particular narrowband switches on the PSTN. The mechanics of how the process works, however, is a question of fact for the jury and not properly resolved on summary judgment.

### C. Processor that Receives Narrowband Signaling Messages

Several asserted claims require a "processing system" or "processor" to receive signaling messages from a "narrowband system."[3] The parties agree that the "narrowband system" is the PSTN, and they further agree that signaling messages must be formatted for a narrowband system, as is the case with SS7 signaling. (*See* D.I. 251 at 13-14, D.I. 278 at 13-14). The parties dispute what the "processing system" or "processor" is on the accused networks. According to Defendants, Sprint's expert has asserted that the softswitch is the "processing system" or "processor." (D.I. 251 at 13-14). In its briefing, Sprint also advances the theory that the softswitch in combination with the media gateway controller constitutes the "processing system." (D.I. 278 at 14).

---

[3] The '052 Patent (cls. 3, 5), the '3,561 Patent (cl. 23), the '6,561 patent (cls. 11, 20), and the '340 patent (cl. 14).

In short, for the accused networks to infringe, their softswitch (or, under Sprint's theory, the softswitch acting with the media gateway controller) must receive narrowband signaling from the PSTN. The parties' briefing on this topic raises two issues. Is there a genuine issue as to whether the softswitch of the accused networks receives SS7 or narrowband signaling from the PSTN? If not, does Dr. Wicker's assertion that the media gateway and the softswitch are a part of the same processing system or processor pass muster?

Defendants present evidence showing that the softswitch itself does not receive narrowband signaling in three networks—the Lightpath, Suddenlink, and Optimum 2014-present networks—and thus those networks cannot infringe. (D.I. 251 at 13-15). Defendants' evidence suggests that narrowband signaling comes from the PSTN to the media gateway controller rather than directly to the softswitch on these networks. (*Id.* at 14). By the time the message gets to the softswitch, it is no longer in narrowband format. (*Id.*). Defendants assert that Dr. Wicker admitted that the softswitch does not directly receive and process SS7 signaling. (*Id.* at 14-15).

Sprint disagrees, pointing to technical documents, technical witness depositions, and Dr. Wicker's opinions, which suggest that the softswitches do receive narrowband signaling. (D.I. 278 at 5-6). I find that Sprint's evidence raises a material issue of fact for two of the three accused networks—the Optimum 2014-present network and the Suddenlink network. For the Optimum 2014-present network, one of Defendants' technical witnesses, Mr. Khan, affirmed that an architecture document showing "TDM A Links" between the "SS7 Network" and the "Softswitch" was accurate. (D.I. 281-1, Laroque Ex. 1, at 91:17). Mr. Khan further confirmed, "[T]his TDM link between the SS7 network and the softswitch would be used to carry an SS7 IAM message[.]" (*Id.* at 92:2-7). Defendants respond that Mr. Khan later explained that the diagram was not accurate and that the SS7 signaling message actually comes to the media

6

gateway control. (D.I. 299 at 4). Contradictory witness testimony, however, is the domain of the jury. Sprint has presented at least some evidence that the softswitch receives SS7 messaging on the Optimum 2014-present network. This precludes summary judgment.

As for the Suddenlink network, Defendants' technical witness Mr. Hamilton agreed that the softswitch "exchanges SS7 signaling." (D.I. 281-1, Laroque Ex. 2 at 147:5-148:5). Defendants argue, "Nowhere did Mr. Hamilton suggest . . . that the accused Suddenlink network *receives* the *specific* SS7 or narrowband signaling messages (*e.g.*, initial address messages) required by the claims." (D.I. 299 at 5). This is a question of fact for the jury to decide. Defendants' expert agreed that the softswitch exchanged SS7 signals, which could mean that the softswitch received SS7 signals as the claims require, and it is enough to survive summary judgment.

Regarding the third accused network, I agree with Defendants: "Sprint cites no evidence as to the Lightpath network." (*Id.* at 5). The documents and testimony cited by Sprint all relate to the Optimum and Suddenlink architecture. The only support Sprint offers regarding the Lightpath network is Dr. Wicker's report. (*See* D.I. 278 at 5). Dr. Wicker does summarize, "Infringing Inbound Calls . . . were initiated with the reception of a SS7 IAM into a Lightpath CFS softswitch[.]" (D.I. 280-1 at page 609 of 1108). In the next paragraph, however, Dr. Wicker explains in more detail the basis for the summary statement. The SS7 signals are received by the media gateway, not the softswitch: "The SS7 IAM, including the dialed number, was received at a signaling card on the media gateway. The signaling card on the media gateway then sends the dialed telephone number contained in the SS7 message to the Lightpath CFS softswitch[.]" (*Id.*). Sprint's support is no support.

Since Sprint has failed to raise a genuine issue of fact as to whether the Lightpath network receives narrowband signaling into its softswitch, I must address Sprint's secondary argument that the media gateway controller along with the softswitch can constitute the relevant "processing system" or "processor." (*Id.* at 14). According to Sprint, "Dr. Wicker's expert opinion provides that there would still be infringement even if the signaling gateway functionality were contained in a different box than the softswitch." (D.I. 278 at 15). "As Dr. Wicker explained, there is no restriction in the asserted claims that requires the softswitch and the media gateway controller's signaling gateway to be combined in one unitary device." (*Id.* at 14).

Defendants argue that Dr. Wicker's opinion only cites to deposition testimony and technical documents regarding the Optimum architecture. (*See* D.I. 280-1 at 331 n.4 of 1108). I agree. There is nothing to connect his assertions to the Lightpath network. Even if Dr. Wicker's opinion could be applied to the Lightpath network, I agree with Defendants that Dr. Wicker's footnote is conclusory. The extent of his analysis appears to be, "In this scenario, the processing system includes the combination of the softswitch and the media gateway controller." (*Id.*). Elsewhere in Dr. Wicker's report, he fails to explain how the media gateway controller is part of the processing system. (D.I. 299 at 6 (pointing to Dr. Wicker's limitation-by-limitation analysis, which does not discuss the media gateway controller as being part of a processing system)). Overall, I agree that this is not enough for a reasonable juror to find that the media gateway controller is part of the processing system that receives narrowband signals. Thus, Sprint has failed to raise a genuine issue of material fact as to the Lightpath network, and summary judgment will be granted against Sprint on all asserted claims of the '052, '6,561, and '340

patents and claim 23 of the '3,561 patent as they relate to that network. Sprint's claims against the Suddenlink and Optimum 2014-present networks can go forward.

### D. Voicemail Service Selection

Sprint contends that all four accused networks infringe claim 1 of the '224 patent:

> A method for operating a communication system, the method comprising:
>> receiving information into a processing system . . . ;
>>
>> in the processing system, selecting a service and a service node to provide the service based on the information; . . .
>>
>> in the processing system, generating and transmitting a second message from the processing system to the service node wherein the second message indicates the selected service and user; . . . .

In short, the method includes a processing system that selects a service and a service node and then transmits messages. The second message transmitted "indicates the selected service and user." '224 Patent, cl. 1. Under Sprint's theory of infringement, the "service" is voicemail, the "service node" is the voicemail server, and the "processing system" is the softswitch. (D.I. 251 at 16).

The parties appear to agree on the relevant mechanics of the accused networks. The processing systems (softswitches) only identify a voicemail service node, not the "service" (voicemail) itself. The "second message" on the accused networks only indicates the user, not the "selected service." (*See* D.I. 251 at 17; D.I. 278 at 7). Defendants argue that because the softswitch does not select both the voicemail server and the voicemail as required by the claims, the accused networks cannot infringe. (*Id.* at 17). Defendants further argue that the accused networks cannot infringe because the "second message" does not "indicate the selected service" but only indicates the user. (*Id.*). Defendants also reprise their "selecting" argument that the softswitch does not select anything because it does not choose between multiple options. (D.I. 251 at 16). As before, I do not find this argument persuasive. *See supra* Section III.A.

9

Sprint responds, "[S]electing the voicemail service node amounts to selection of the voicemail service[.]" (D.I. 278 at 16). "The claims here require 'selecting a service and a service node,' which is exactly what these systems do—they select the voicemail service by selecting the service node that provides only voicemail." (*Id.*). Sprint similarly argues that the "second message" indicates the selected service because "[s]uch messages are sent only when a decision is made to route a call to voicemail, and, thus, these messages provide a clear indication of voicemail selection." (*Id.* at 17).

Defendants respond to Sprint's arguments by asserting a claim construction argument. "If sending the second message to the service node were alone sufficient, there would be no need to require that the message also 'indicate[] the selected service.'" (D.I. 299 at 7 (citing *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012))). I agree with Defendants. There is no contested issue of fact here that needs to go to the jury. Sprint's interpretation of the claim language in this instance is too far afield. In particular, the claim language "wherein the second message indicates the selected service and user" suggests that the message itself indicates the selected service. But the second message does not. Thus, I will grant Defendants' motion with regard to claim 1 of the '224 patent.

### E. Selecting a Network Code

Claim 38 of the '3,561 patent applies to outbound calls and includes the step of "selecting a network code that identifies a network element to provide egress for the user communication from the packet communication system to a narrowband communication system." '3,561 Patent at 23:23-26. As before, under Sprint's infringement theory, the softswitch is the "processing system." The claimed "network code" is the media IP address.

The parties seem to agree with the basic structure of how the system functions, or at least that the softswitch pings the media gateway, and the media gateway in turn sends its media IP address back to the softswitch. (*See* D.I. 251 at 18-19; D.I. 278 at 18). Defendants argue that the softswitch does not "select" the IP address because it does not choose from multiple options. (D.I. 251 at 18). As before, I am not persuaded by this argument. *See supra* Section III.A. Defendants further argue that the softswitch does not identify the media IP address because it is the media gateway that provides the media IP address to the softswitch. (*Id.*). Sprint responds, "Claim 24 of the '3,561 patent (from which asserted claim 38 depends) does not require that the processing system directly select the network code." (D.I. 278 at 17). According to Sprint, "[T]he processing system … causes [the selection of the media IP address] to happen," and this is enough for a jury to conclude that the accused networks infringe. (*Id.* at 18).

Defendants attack Sprint's response on two fronts.

First, Defendants point out that other asserted claims have limitations requiring that the processing system "process … to select." (D.I. 299 at 10). These claims have been construed such that "the processing system did not actually need to do the selection, but rather it needed only to do processing contributing to the selection." (*Id.*). The claim at issue does not have "processing to select" language. Instead of "processing to select," the parallel language is "selecting." Thus, according to Defendants, "[I]t makes clear the processing system must do the selecting." (*Id.*).

Second, Defendants argue that the claim preamble precludes Sprint's interpretation. The preamble to Claim 24, upon which Claim 28 depends, claims a "method of operating a processing system to control a packet communication system for a user communication." '3,561 Patent at 23:20-21. Thus, according to Defendants, the preamble dictates that it is the processing

11

system (here, the softswitch) that must perform the step of selecting the media IP address. (D.I. 299 at 10).

I am not persuaded by Defendants' arguments. "[I]t is not unknown for different words to be used to express similar concepts . . . ." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004). I do not find that the claim preamble alters the meaning of other parts of the claim. Thus, I will deny Defendants' motion regarding claim 38 of the '3,561 patent.

## IV. CONCLUSION

In conclusion, I will grant Defendants' motion as to (1) the Lightpath network for the claims that require a softwitch to receive narrowband signaling messages and (2) claim 1 of the '224 patent which requires indicating the selected service. Defendants' motion is otherwise denied.

An appropriate order will issue.