IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br><br> Plaintiff; <br><br> v. <br><br> CEQUEL COMMUNICATIONS, LLC D/B/A SUDDENLINK COMMUNICATIONS AND CSC HOLDINGS, LLC D/B/A OPTIMUM-CABLEVISION, <br> Defendants. | Civil Action No. 18-1752-RGA |

MEMORANDUM ORDER

Before me is Sprint's Motion to Preclude Laura Stamm's Damages Opinions. (D.I. 258). Sprint seeks to exclude (1) part of Ms. Stamm's lost profits analysis[1] and (2) a calculation that has not been disclosed in Ms. Stamm's report. I have considered the parties briefing. (D.I. 259, 277, 294). For the following reasons, Sprint's motion is DENIED.

Under the *Panduit* test for lost profits, a patentee must establish four factors, the first being "demand for the patented product." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). Sprint's expert, Dr. Mangum, opines that the relevant patented product is Sprint's wholesale VoIP services. (D.I. 276-1, Ex. A ¶¶ 62–65). Ms. Stamm disagrees, arguing that a "more limited patented product (namely, the provision of services to cable companies to facilitate the IP-PSTN conversion)" is the relevant product. (D.I. 260-1, Ex.

---

[1] Sprint does not challenge Ms. Stamm's alternate lost profits calculation of $24.3 million. (D.I. 259 at 23 n.5).

1

A ¶ 75). The asserted patents cover the ability for packet-based networks such as IP to connect to the PSTN, which Ms. Stamm refers to as "IP-PSTN conversion." (D.I. 279-2, Ex. H ¶ 10 n.5). Sprint's wholesale VoIP services included unpatented services along with IP-PSTN conversion. (D.I. 249-2, Ex. B ¶ 29).

Sprint argues, "It is black-letter law that to satisfy the first *Panduit* factor, Sprint need only prove demand existed for Sprint's service 'as a whole,' and not just for the patented aspects." (D.I. 259 at 20 (citing *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017))). According to Sprint, Ms. Stamm's consideration of a "more limited patented product than what Sprint actually sold . . . [is] contrary to controlling law." (D.I. 259 at 20).

I do not think Ms. Stamm's analysis impermissibly examines demand for a portion of a patented product. Rather, she disagrees with Dr. Mangum on the relevant patented product itself. Defendants explain, "Despite evidence that Sprint could and did unbundle certain of its VoIP services, Dr. Mangum admitted he did no analysis to determine what combination of VoIP services Cablevision would have purchased from Sprint in the but-for world."[2] (D.I. 277 at 16). The extent to which Sprint would have unbundled its services in a but-for world, and thus the relevant patented product, is a question of fact for the jury.

In its opening brief, Sprint also argues that Ms. Stamm applies an "extra apportionment step after the *Panduit* factors." (D.I. 259 at 22). Sprint does not explain where this extra apportionment occurred. (*Id.*) Defendants contest Sprint's assertion as inaccurate and Sprint

---

[2] Sprint argues that Ms. Stamm's analysis of *Panduit* factor 1 does not "rel[y] on" the evidence of unbundling cited by Defendants. (D.I. 294 at 8). Ms. Stamm discusses the unbundling evidence elsewhere in her report, where she also states, "Dr. Mangum did not define Sprint's 'patented product' and did not specifically address which 'bundled' services Cablevision would have been required to purchase." (D.I. 279-2, Ex. H ¶ 132, 137). Ms. Stamm has clearly used the evidence cited by Defendants to form her opinion on the relevant "patented product."

does not reply. (D.I. 277 at 17; D.I. 294 at 6–8). Thus, I cannot say that Ms. Stamm has improperly applied an extra apportionment step.[3]

I see no reason to exclude Ms. Stamm's lost profits opinion for a failure of "qualification, reliability, [or] fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404–05 (3d Cir. 2003).

Sprint also seeks to exclude a calculation that does not appear in Ms. Stamm's report. Sprint argues, "[Ms. Stamm] should not be allowed to testify that the parties would settle on a particular number below $48.6 million without performing any kind of calculation for how the parties would get from $48.6 million to that lower number, which she has not done." (D.I. 259 at 24 n.6). As Sprint notes, Ms. Stamm has not offered an opinion on how to manipulate the $48.6 million rate to arrive at a particular number, and thus there is nothing to exclude.

Sprint's Motion to Preclude Laura Stamm's Damages Opinions (D.I. 258) is DENIED.

IT IS SO ORDERED this 4th day of February 2022.

/s/ Richard G. Andrews
United States District Judge

---

[3] Federal Circuit cases agree that apportionment is necessary in lost profits cases. How that principle is implemented in any given case depends upon the facts of that case.