IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPRINT COMMUNICATIONS COMPANY L.P., <br><br> Plaintiff; <br><br> v. <br><br> CEQUEL COMMUNICATIONS, LLC D/B/A SUDDENLINK COMMUNICATIONS AND CSC HOLDINGS, LLC D/B/A OPTIMUM-CABLEVISION, <br><br> Defendants. | Civil Action No. 18-1752-RGA |

MEMORANDUM ORDER

Before me is Defendants' Renewed Daubert Motion to exclude the reasonable royalty opinion of Plaintiff's expert, Dr. Mangum. (D.I. 331). Defendants' original *Daubert* (D.I. 247) raised some concerns that I felt should be more fully fleshed out with a *Daubert* hearing. (D.I. 324 at 13–15). On March 7, 2022, I heard testimony from Dr. Mangum regarding his analytical approach to the reasonable royalty. (D.I. 336). The testimony and supplemental briefing cleared up my concerns. (D.I. 336, 332, 340, 342).

Dr. Mangum's reasonable royalty opinion follows the "analytical approach/method" described by the Federal Circuit in *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986) and *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Under this method, the patentee may be awarded the difference between an infringer's net profit from infringing sales and the infringer's usual net profit absent the infringement. *TWM*, 789 F. 2d at 899.

1

In this case, Dr. Mangum opines that Sprint should be awarded the profit difference between the infringing VoIP telephony and the legacy circuit-switched network. By giving Sprint 100% of the difference, Defendants argue that Dr. Mangum "effectively creates a 100% rule of thumb far more problematic than the 25% rule of thumb rejected by the Federal Circuit in *Uniloc*, 632 F. 3d at 1312-15." (D.I. 248 at 16 (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011))).

When I first considered Defendants' *Daubert*, I was concerned that Dr. Mangum's methodology captured profits attributable to non-patented features of VoIP telephony such as IP-to-IP calls. Upon further consideration, I think Dr. Mangum has considered apportionment and sufficiently grounded his opinion in the facts of this case. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F. 3d 1308, 1333 (Fed. Cir. 2014). Regarding IP-to-IP calls, for instance, Dr. Mangum argues that (1) it is inappropriate to subtract the IP-IP calls because consumers are not charged on a call-by-call basis and (2) IP-IP calling services were never able to charge a fee. (D.I. 336 at 20:13–21:9, 21:10–23:2; 33:10–34:2). Regarding other non-patented features, such as voicemail, Dr. Mangum's approach considers an "apples-to-apples comparison except for the patented technology" to ensure that there are no additional features that need to be apportioned out. (*Id.* at 17:19–20).

One of Defendants' core concerns appears to be that cost savings based on technology unrelated to the VoIP patents are captured in the profit premium. At the *Daubert* hearing, Defendants asked about a hypothetical involving new, less expensive routers and servers:

> So, if someone came up with some new routers and servers that, let's say, they used a different material, and it's just way cheaper to make the routers and servers. In that situation, the profit premium would go up. And under your analysis, all of that would be attributed to the Christie patents; right?

(D.I. 336 at 44:7–12). Dr. Mangum responded:

> Yes. If the value related to the technical VoIP delivery was lower, then that would mean that there's more profit, lower through costs, then there would be more profit left over, and that would be calculated through the analytical approach.

(*Id.* at 44:13–17).  Plaintiff gives several reasons why Dr. Mangum's approach is nevertheless appropriate.  For instance, Plaintiff argues, "Dr. Mangum's analytical approach is based on real-world documents from the early 2000s, when the use of a VoIP-to-PSTN system was first becoming available, and thus apportions out the entire value of any later developments to make VoIP technology more efficient."  (D.I. 340 at 6–7).  Further, even if there were improvements to technologies unrelated to the Sprint patents, Dr. Mangum's theory is that the value would be captured by the equipment manufacturer, not Sprint.  (*See* D.I. 336 at 44:1–45:25).  For these and other reasons, Plaintiff argues that Dr. Mangum's approach captures only the "footprint of the patented technology."  (D.I. 340 at 1).

Dr. Mangum's theory appears to be supported using a reliable methodology and accounts for the facts of this case.  I see no reason to exclude it under *Daubert*.

Defendants' renewed *Daubert* motion (D.I. 331) is **DENIED**.

IT IS SO ORDERED this 2nd day of June, 2022.

                                                 Richard G. Andrews
                                                United States District Judge